At this time we'll hear of F5 Capital v. RBS Services. Good morning, Your Honors. May it please the Court? My name is Mark Rifkin on behalf of the plaintiff and appellant, F5 Capital. This appeal asks the Court to decide whether a non-party to a settlement agreement may invoke a forum selection clause in that settlement agreement to compel the plaintiff, one of the settling parties, to sue the non-party in a foreign jurisdiction where the non-party refuses to consent to the foreign court's jurisdiction, personal jurisdiction, over it. Well, can't you get relief, at least couldn't you plead an entitlement to relief from the Royal Bank of Scotland without even naming RBS 5? Because that's just an arm of the Royal Bank of Scotland. No, respectfully . . . It'll do whatever the head orders, right? Well, respectfully, Your Honor, we don't agree with that conclusion. It is a . . . RBS SI, RBS Securities, the American corporation, that's the defendant here, a non-party to the settlement agreement, is an indirectly owned subsidiary, twice removed from RBS PLC, and we do not believe that there are sufficient facts . . . Is the intermediate owner entirely owned by the Royal Bank of Scotland? Yes. Yes. However, we do not believe that there are sufficient facts, certainly none that are known to us, that would allow us to avoid the effect of the separate corporate entity, the existence of the separate corporate entity, RBS Securities, RBS SI. Ordinarily, a parent is not liable for the actions of its subsidiary. We respect the separate corporate entity, unless there are facts suggesting that the subsidiary is merely an instrumentality of the parent. And there's no facts that we know of here that would suggest that. To the contrary, we think that everything that happened wrong, that F5 complained about in this case, was done by RBS SI after the shares were delivered to it. And if I can, there are a few facts that I think had been obscured by the briefing that I'd like to briefly touch on, because it does impact the foreseeability of RBS SI as a party in the settlement agreement. Number one, a paper share certificate was delivered by F5 Capital to RBS PLC, the bank, the Royal Bank of Scotland, in late 2008 or early 2009 as security for a freight forwarding contract, a futures contract, between a related entity called TMT Company and the Royal Bank of Scotland. That paper certificate could well have been held as security in a bank vault somewhere. It could have been held by RBS in its own bank vault, or it could have been transferred to the Depository Trust Company, one of the original defendants in this case, and held in a safe deposit box by a Depository Trust Company. RBS Securities, RBS SI, was not named in the settlement agreement, although another third party, Ashurst, RBS PLC's London Council, was specifically named and was charged with taking The idea of a transfer to a third party, whether it was DTC or some other third party, that generally was foreseeable. You would agree with that? No, not at all. So not even a transfer of a paper certificate to DTC? No, there was no need. RBS is a bank with... No, no, no. I'm not talking about need. I'm talking about whether it was foreseeable. No, that's the point. It's a simple paper share certificate, and RBS is perfectly capable of holding that share certificate. Isn't it also true that as a matter of routine, banks also routinely send these certificates to be held by the Depository Trust Corporation? I think in the ordinary sense, when the shares are electronic to begin with, yes. This is a somewhat unusual circumstance. Well, whether they're electronic. I mean, 30 years ago, DTC was equally important. But this didn't happen 30 years ago, and this didn't involve electronic shares. It involved a paper share certificate that RBS could have held. I think that it is possible that RBS might have transferred the paper share certificate to DTC. And, yes, I don't think that that would be outside the possible range of foreseeability. I agree that that's certainly possible. Why categorically is that different from transferring a paper share certificate to a wholly owned subsidiary? Because there was no need for RBS PLC to have done that. Well, Your Honor, you ask a question about foreseeability, and I think the two are related. If there was no need for the share certificate to be transferred to anybody, much less an indirectly twice-removed subsidiary, to in turn be converted into electronic form and delivered to yet another party, I think we get so far down the chain of foreseeability because of the requirement, the necessity. It's simply not necessary for RBS SI to have been involved in the exchange at all. And that's why RBS SI wasn't named in the settlement agreement, which was entered into in 2012, although another third party was. And this, I think, is very important. The settlement agreement refers to RBS's solicitors, Ashurst, and it directed that Ashurst take steps to return the security to the plaintiff, to F5, not RBS SI. And I think it's also important to understand about the settlement agreement that the provision, the choice of forum provision, had two clauses in it, one of which required the parties to the settlement agreement to litigate a dispute in the courts of England. The second clause in that same section, the second part of that same section, provided that the parties stipulated to the jurisdiction of the London court for purposes of adjudicating a dispute between them. RBS SI wants to, as a non-party to the settlement agreement, and respectfully, Your Honors, as a completely unforeseeable player in this entire transaction, RBS SI wants to invoke as a sword the first part of that choice of forum provision, that the parties agree to litigate any dispute arising out of the settlement agreement in the courts of England, but ignores the second part. When we asked RBS SI to consent to the jurisdiction of the London court, they said no. When we raised that issue in response to the motion to dismiss under forum nonconvenience ground, they did not say, oh, yes, we submit to the jurisdiction of the court for purposes of this dispute. What is the status of the motion for reconsideration on that issue? We believe it was denied when the court entered judgment, Your Honor. And what the court said in the judgment is as follows. In entering the judgment, the court said, having considered the full record of this case, and at the time the judgment was entered in July of 2016, the motion for reconsideration had been fully briefed for eight months. So the court says when it entered judgment, having considered the full record of the case, including applicable principles of law, and having issued a memorandum granting the motion to dismiss, the court then enters judgment. I think the only conclusion that we could draw is that the court either denied the motion for reconsideration or was unwilling to consider it. But it remained. The point at which you raised the question of whether dismissals should be conditioned on this consent to suit is in this motion for reconsideration. Is that correct? I'm just making sure I understand the record. Well, we raised in response to the motion to dismiss itself. Our response was premised on the fact that the courts of England would not have personal jurisdiction over this American twice-removed subsidiary. It's a Delaware corporation. Its principal place of business is in Connecticut. And to the extent we know, the courts of England would have no jurisdiction over it. And so for that reason, we said it's not an adequate and available forum for the plaintiff to litigate. Did you seek a condition of dismissal before the motion for reconsideration? We did not, Your Honor. We did not specifically ask for a condition until the motion for reconsideration. And I should point out that even in this court on appeal, this court may impose conditions such as those on a dismissal under forum nonconvenience ground. And I would like to refer the Court to two cases that were not specifically cited in our briefing, but I think are instructive. I beg your pardon? You say not specifically cited. Not cited at all. No, not cited at all. The first, specifically or otherwise, Your Honor, the first is a case called USHA, USHA India Limited v. Honeywell. And the citation is 421F3-129. This is a Second Circuit decision from 2005. And the court noted that under 28 U.S.C. 2106, it may modify any judgment of a district court. And in that case, the court said that the final judgment dismissing with prejudice ought to be postponed for a period of 18 to 24 months so that the plaintiff could decide, could pursue a claim in India. And the court would know whether the Indian court would exercise jurisdiction over it, which is, of course, the question that we've raised here. You've reserved some rebuttal. Yes. I will sit down. Thank you, Your Honor. May it please the Court, Jeffrey Babin for RBS Securities, Inc. A few things to address the points that were raised by counsel. One is that there is no requirement that under the Magi case, for example, which is the most recent decision by this court on this issue, that a form selection clause lists every possible company that might provide services to the parent company in order for there to be foreseeability that a claim against that company would come within the form selection clause. It could not come as an unforeseen surprise to F5. You're saying that this is a dispute that arises out of or relates in some way to the agreement. That's exactly correct, Your Honor, and that is all Magi says with respect to the foreseeability. Whether or not it's a contractual party, it's very clear that under Magi, a range of participants, contractual or not contractual, benefit from the clause. When the conduct that's alleged here is, of course, related to the contractual relationship. I agree with that. But Magi is a little different because the Vatican State was mentioned in connection with both the negotiations and in some other related documents, and this is not. RBSSI, as I understand it, was never mentioned, and I think that that's the point. Yes, and I don't believe that that was a required feature in respect to the Magi. Well, we'll go on and on to talk about that. Yes, I'm happy to. It's an important feature. But I think it's very important also to look at the complaint in this case to understand the context in which they're suing RBSSI, and that is throughout, all of their claims repeatedly refer to RBS and the obligations of RBS with respect to the settlement agreement, and that all we have here is a company that, as many companies do, use a variety of operating subsidiaries to provide services, and it would have no need to lock itself in as to exactly how it's going to carry out its agreements by listing every operating subsidiary that might possibly touch upon the transaction. And it's simply not necessary because they cannot plead around RBS, and they didn't plead around RBS in the settlement agreement. Everything they say that they're trying to get from RBSSI, they actually say in their own complaint. It's RBS's fault. Let me just move to the other issue first, which is the unjustness. So if you succeed here, will you assert lack of personal jurisdiction as a defense in England? Your Honor, they, if they, we actually don't know what the courts of England would do because they have not met their burden. That is, under the Martinez and Phillips test. So I take it that that's a, that you will assert lack of personal jurisdiction in England. We reserve our right to do so if they were to sue RBSSI in England. And why is that not then, why doesn't that fall into the category of unjust? Because, this is the reason, Your Honor. Under Martinez and Phillips, once you've established that you have a mandatory contractual arbitration clause, that within the meaning of magi, the claims and parties relate, then there's a heavy burden shifting on the other side to show that it's unfair or unjust. And what the cases have said, as opposed to a traditional forum non, where you balance many interests, the Phillips case, for example, and the Martinez case, and this derives from the U.S. Supreme Court's decision in Bremen, say, if you've agreed contractually to go there, whatever difficulties come with going to that forum, you've agreed to. Martinez says you've waived the right to challenge the preselected forum as inconvenient. And in this case, particularly— Why do we have that fourth prong in Martinez? I mean, look, they want an accounting. They think that they've gotten ripped off in some way, shape, or form, right or wrong, and they want an accounting. They are now told, if you succeed, you've got to go to England. But then you say that the English courts have no personal jurisdiction over us. They don't get the accounting. Well, they have a heavy burden, according to the case law. They actually didn't brief the personal jurisdiction issue. They simply said there wouldn't be. We don't know. They didn't provide any English case law. They didn't provide any affidavits of English lawyers to give us any idea to satisfy their burden as to what would happen if a subsidiary— You could obviate that by not contesting it. On the other hand, you're a Connecticut corporation, and you may not find it convenient yourselves to go to England or to Bangladesh if it's to be arbitrated in DACA. So the question I have is, could this claim have been brought against the Royal Bank of Scotland itself in England? And if so, would your client accede to directives from the Royal Bank of Scotland to provide the accounting and the other forms of relief that are sought here? Certainly, Your Honor, because— It is not unjust. And if we look at paragraph 20 of the complaint— The answer is it is not unjust. Is that true? I mean, is that something that RBS can do, and you agree with that? Yes, because RBS—RBSSI was simply providing services to the parent company. Let's just get a yes. Yes. Not yes because. Yes. Thank you. Yes, and I think what's important, again, is the way they plead the complaint is that they themselves plead the complaint that they can get full relief from RBS. They went to RBS for assurances regarding an accounting. That's in their complaint. They went to RBS, not RBSSI, to say reinvest the dividends on the collateral that's being held. They went to RBS, and they say that RBS did not have the authority to convert F-5 stock certificates to electronic form. And most important, Your Honor, they say on page 813 of the appendix, RBS, through its subsidiary, RBSSI, still exercises possessory ownership rights over the assets they're seeking. So their own complaint says that RBS—RBS owns what they're seeking. And with respect to any interest or dividends, it's RBS that owes those, and they went to RBS to get assurances that that money would be turned over. So this, as the district court found, there's no reason to have come to Connecticut. There's no reason not to have named RBS. They have been bringing numerous lawsuits, F-5, in this court, in the District of Connecticut, not just against us, but everyone involved in these transactions. And there's a concern about our subsidiaries, which can be in many parts of the world, and having to concede to jurisdiction. And I think it's very important. There is no Second Circuit case under Form Selection Clause, whether it's Martinez, Magi, the New Moon case, or Phillips, that imposes the kind of conditions that we see in traditional Form Non cases, where you are weighing private interests. They agreed to go to England, and whatever happens in England, they agree to. That's what Bremen and Phillips says. The cases they cite in the reply brief, every single case which they raise in terms of imposing conditions, which is something they only asked for the first time on reconsideration, so it wasn't even properly before the district court, this request, are traditional Form Non cases, where it makes sense because it's discretionary, not something that they agreed to go. And get this relief contractually from RBS, and not to try and bypass this in order to bring a suit. And I think one of the cases they cite is very instructive. They cite in their reply brief a 2015 Southern District New York decision called BMR and Associates. There, the district court dismissed under Form Selection, didn't mention any conditions, and then said, if I'm wrong, the district court said, if I'm wrong, I'm also, as an alternative holding, going to dismiss under traditional Form Non and balancing of interests, and for that, I will impose conditions that they waive jurisdiction, waive statutes of limitations, and that is why it was a holding in that case. We don't see that in the Form Selection Clause cases. They cite Fifth and Ninth Circuit case in a footnote in their opening brief also about these conditions. Again, those were traditional Form Non cases. They agreed to go to England. They can get full relief. They can get the accounting. Their own complaint says that they can go to RBS and get that accounting. So there's no reason, therefore, in the New Moon case, if I can just add, raise the question, even if the statute of limitations is barred. What about this case that Mr. Bifkin cited to us, Usha, that allows us on appeal to, in essence, force you to give up whatever defense based on personal jurisdiction you might have? Yes. Well, I haven't read the case that wasn't specifically cited in their brief, but if that is a case that, again, is a traditional Form Nonconvenience case, then it would fall within what I just said is the law of this circuit. Even if not, the Second Circuit has never said, as far as I'm concerned, as far as I know, and they haven't cited any case, that imposing these kinds of conditions is always a requirement. They say the Fifth and Ninth Circuit have said that. Again, those weren't even Form Selection Clause cases. And so there could be flexibility in these cases, so they can't simply fish around, find a defendant in the United States, and therefore bypass. And if I can just mention very briefly one more thing, Your Honor, because there's a lot of discussion about alter ego, and they could have simply, that it requires some type of alter ego, and the Magi case is a footnote in the Magi case that says to the extent that alter ego is something that comes up in arbitration cases with respect to non-signatories, that doesn't apply to Form Selection Clauses. It's a much broader standard in Form Selection, and therefore, much of their brief is about alter ego and third-party beneficiaries. The Magi case doesn't depend on any of those considerations. And for that reason, Your Honor, I would ask that you affirm the district court's judgment. Thank you. We'll hear about it. Thank you, Your Honors. Very briefly, the Magi case, we think, does make the distinction when a non-party is obvious because it's been discussed and addressed, and everyone knows that the non-party is going to play a role. It's a different case. I would urge the Court to look at the clause, the Form Selection Clause in the contract, the settlement agreement. And again, I want to remind the Court that it has two parts to it. The first part says, the parties, using that word, the parties agree that the courts of England shall have exclusive jurisdiction to hear and decide any action or proceeding. And then second, it says, and for these purposes, each party irrevocably submits to the jurisdiction of the courts of England. Just to take off on what Mr. Babin said, what is the source of the duties you claim RBSSI owes you, the duties of care and so on? There are essentially two sources. The first, when we filed the complaint, we did not have the shares returned to us. And so the source of that duty was RBS's possession of the stock. And yes, it's true that in the complaint, in the complaint, yes, Your Honor, in the complaint, when we asked RBS through its subsidiary, RBSSI, to return the shares, it's because the settlement agreement directly addressed the return of those shares. Derivatively, one source of the duty emanates from the settlement agreement. Do you agree with that? We do, but I want the court to remember that those shares were returned to F5 in October of 2015, a month after we filed the complaint. So that issue is no longer part of the case. And for that reason, we dismissed DTC as a defendant because that's all they were. They were just simply the holder of the shares in electronic form. And once we got the shares back, that was no longer an issue. Nor was RBS, PLC, the bank, a player. The source of the duty now, RBSSI's duty, is that we believe that RBSSI converted the shares while it was in possession of them, essentially as a bailment, and it used those shares for its own benefit. And that's the accounting that we seek. RBS, PLC, the bank, had nothing to do with that. Nothing to do with that. It didn't emanate from the security interest. It didn't emanate from the settlement. It had nothing to do with the return of the shares. It was purely what RBSSI did with the shares here in the United States while they were in their possession, after they converted them into electronic form without F5's knowledge or consent. And all they had to say was we didn't do anything with those shares if that was the case. There was a history back and forth between the parties before this complaint was filed. It's how we found out some of these facts. And just like they could have obviated the argument about jurisdiction with a simple agreement to submit to the jurisdiction of the courts of England, as the parties did in the settlement agreement, they wanted to have that argument both ways. Here, they have not denied that they did something with those shares, that RBSSI did something with those shares while those shares were in its possession, not RBSPLC's possession. The possession issue is now over. It's what was done with those shares for the intervening three or four years that is now of concern to F5. Thank you, Your Honors. I appreciate your time. Thank you both. We will reserve decision.